United States District Court
Southern District of Texas
**ENTERED**
March 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREEM JEFFERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00545 |
| | § | |
| ED GONZALEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the motions to dismiss filed by Defendants Harris County (Dkt. 15) and Sheriff Ed Gonzalez ("Sheriff Gonzalez") (Dkt. 14). After reviewing the pleadings, the evidence submitted, and the record of this case, these motions are **GRANTED**. The request by Plaintiff Kareem Jefferson ("Jefferson") to amend his complaint (Dkt. 24) is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the Court's consideration of the pending motions, the following facts alleged in the amended complaint are accepted as true. This civil rights lawsuit arises from the alleged use of force by a Harris County Deputy against Jefferson. Jefferson "had finished serving his sentence at the Harris County jail" and was in the general area of the jail designated for inmates about to be released. (Dkt. 10 at 2). Defendant Harris County Deputy Alexander Ramos ("Ramos") confronted Jefferson about standing past a "line"

1

where inmates were not allowed. *Id.* Jefferson "spoke some non-threatening words to Ramos" and then Ramos struck Jefferson "with his fist and took him to the floor." *Id.* Ramos subsequently "filed a materially false incident report" against Jefferson. Jefferson filed an internal affairs complaint against Ramos, but Jefferson was arrested and charged with the felony crime of assault on a public servant. These charges were pending against Jefferson for 610 days until they were "dismissed in his favor." *Id.*

Jefferson, *pro se*, originally filed a complaint in this Court under civil action number 4:19-cv-1648 alleging that Ramos' conduct violated his constitutional rights. That complaint only named Ramos as a defendant and the action was subsequently stayed pending the outcome of Jefferson's criminal assault case. Jefferson retained counsel and filed a motion to reinstate, which was granted. A little over one month later, Jefferson voluntarily dismissed that complaint and on the same day he filed another complaint in a new lawsuit. Before the lawsuit was transferred to this Court from Chief Judge Rosenthal, Jefferson filed an amended complaint. The same incident between Jefferson and Ramos serves as the basis of all three of Jefferson's complaints.

In his latest complaint, Jefferson has again sued Ramos. The amended complaint also asserts federal constitutional claims against Harris County and Sherriff Gonzalez, in his individual capacity, under 18 U.S.C. § 1983. In support of his Section 1983 claims, Jefferson alleges that Ramos used excessive force by hitting and arresting him for speaking in violation of his First, Fourth, Eighth and Fourteenth Amendment rights. Jefferson asserts that under the holding in *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978)*,*

2

Harris County is liable for this unlawful conduct because the county has a custom, policy, or practice of permitting the use of using excessive force on individuals, "abating internal affairs complaints" into the use of excessive force and not disciplining its officers who use excessive force. *Id.* Jefferson alleges that Sherriff Gonzalez is liable in his individual capacity because he "knows of the policies and many instances of excessive force yet," as a policy maker, he failed to stop Harris County's "practices and policies leading to excessive force." (Dkt. 10 at 3).

In its pending motion, Harris County argues that it is entitled to the dismissal of Jefferson's Section 1983 constitutional claims because he has failed to plead facts establishing that an unconstitutional county policy, practice or custom was the moving force or direct cause of his injuries. Sherriff Gonzalez argues that he is entitled to qualified immunity from Jefferson's claims against him in his individual capacity. The Court considers these arguments below.

## LEGAL STANDARDS AND APPLICABLE LAW

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court

3

must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.*

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of  entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

4

## II.     42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979)). To establish § 1983 liability, plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). Plaintiff must also show that the constitutional or statutory deprivation she suffered was intentional or due to deliberate indifference and not the result of mere negligence. *Id.* (citing *Baker*, 99 S. Ct. at 2695).

### A.  Section 1983 Suits Against Governmental Entities

To state a claim under Section 1983 against a governmental entity, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the

moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

> "An official policy is either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents the municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."

*McIntosh v. Smith*, 690 F. Supp. 2d 515, 530 (S.D. Tex. Feb. 2, 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

A local government's decision not to act can be unconstitutional where the failure amounts to "deliberate indifference" to the violation of an individual's constitutional rights. *See e.g. Connick v. Thompson*, 563 U.S. 51 (2011). Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of its action." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997). A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, a plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of his decision. *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (1997).

6

**B.  Section 1983 Suits Against Individuals and Qualified Immunity**

Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012). To establish supervisory liability, "[a] Section 1983 claimant must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation" *Id.* Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002). Under this analysis, customs or widespread practices are akin to official policies. *Cozzo*, 279 F.3d at 289.

The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law of which a reasonable person would have known. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). This inquiry requires a two-prong analysis, in which the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*,

7

563 U.S. 731, 742 (2011). A right is "clearly established" only where pre-existing law "dictate[s], that is truly compel[s] (not just suggest[s] or allow[s] or raise[s] a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in these circumstances." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012). Even if a defendant's conduct violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity unless "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights" *Carroll v. Ellington,* 800 F. 3d 154, 169 (5th Cir. 2015).

## ANALYSIS

### 1. Jefferson Has Failed to State a Claim Against Harris County for Excessive Use of Force or Violation of His Free Speech Rights.

#### A. Custom of Allowing Excessive Force

Jefferson argues that under *Monell* he has plead an unconstitutional custom by Harris County "of allowing officers to use excessive force, and a combination of a custom of under-punishing instances of excessive force, and a policy or policies of not investigating instances of excessive force in some circumstances" by listing in his complaint "88 instances of excessive force used by Harris County Sherriff's Office officers overs the last 14 years, in addition to a U.S. Department of Justice report describing systemic deficiencies in the Harris County jail regarding the use of force instances and reviews." (Dkt. 24 at 11) (Dkt. 24 at 4). The Court disagrees.

8

The incidents listed in Jefferson's amended complaint are nothing more than summaries of dozens of cases involving Harris County Sheriff's Officers in which individuals were killed or injured by being shot. (Dkt. 10 at 30-53). Jefferson has not alleged any facts showing that the listed incidents are similar to the incident at issue in this case, occurred in the Harris County jail or even that the incidents were found to involve excessive force.  (Dkt. 10 at 27-115). Some of the incidents listed either do not mention the law enforcement agency involved or state that the agency involved was the Houston Police Department and not the Harris County Sheriff's Office. The mere listing of these incidents without more does not allege an unconstitutional county custom, practice or policy that was the moving force behind the incident involving Jefferson and Ramos. *See Llamas v. Harris County, Tex.*, No. 4:19-CV-1029, 2019 WL 7708605, at *5 (S.D. Tex. Nov. 22, 2019), *report and recommendation adopted*, No. CV H-19-1029, 2020 WL 410196 (S.D. Tex. Jan. 23, 2020). Furthermore, the Justice Department report about the Harris County jail cited in the complaint was from over 13 years ago and there are no factual allegations that Harris County did nothing in response to the report or that what Harris County did do was constitutionally inadequate. Because Jefferson failed to plead facts that show similar incidents of excessive force or knowledge or approval by a policymaker of a pattern or practice of excessive force, he has failed to state a plausible claim of municipal liability under this theory against Harris County. *Id.*; *see also Knight v. City of Balch Springs*, 3:11–CV–1122–B, 2011 WL 3519938, at *4 n. 4 (N.D. Tex. Jul

9

25, 2011) (collecting cases from other jurisdictions), *recommendation adopted by* 2011 WL 3510877 (N.D.Tex. Aug.10, 2011).

## B. Policy of "Abating Internal Affairs Investigations"

Next Jefferson alleges that Harris County has an unconstitutional policy of "abating internal affairs investigations when an inmate or suspect is arrested for a crime stemming from the alleged excessive force incident." (Dkt. 10 at 3). However, the complaint does not allege facts showing that this policy was promulgated with deliberate indifference to the known or obvious consequence of excessive force being used against individuals in jail.  For example, the complaint does not allege what Jefferson means by "abating," that this policy prevented internal affairs investigations into excessive force complaints from being completed or how officials should know that an alleged delay in an internal affairs investigation would lead to excessive force being used against individuals in the jail. Contrary to Jefferson's arguments, the opinion in *Black v. Stephens,* 662 F. 2d 181 (3rd Cir. 1981) does not hold that this alleged Harris County policy is facially unconstitutional. (Dkt. 24 at 12). Accordingly, Jefferson has failed to state a plausible claim of municipal liability against Harris County under Section 1983 for promulgating this alleged policy.

## C.  Ratification of Ramos's Use of Excessive Force

Jefferson also argues that Harris County is liable under Section 1983 because it ratified Ramos's conduct by refusing to reprimand or discipline him for his use of excessive force. (See Dkt. 24 at 10). The Court disagrees. "If the authorized policymakers approve a

10

subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Compare Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification where officer shot fleeing suspect in the back), *with Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification where in response to a minor traffic violation, three patrol cars engaged in a high-speed chase during which they fired wildly at the suspect; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved, killing the innocent rancher as he emerged from his own vehicle.). Under Fifth Circuit precedent, this case does not present such an extreme factual situation.

### D. Policy of Violating the Free Speech Rights Through the Use of Excessive Force

Finally, with respect to his claims regarding his Section 1983 claims against Harris County for violation of his First Amendment rights, Jefferson has alleged neither a policy nor any facts establishing an unconstitutional county custom of retaliating with excessive force against inmates or detainees for their speech. Accordingly, Harris County is entitled to dismissal of all Section 1983 claims asserted against it in this action.

### 2. Sheriff Gonzalez Is Entitled to Qualified Immunity From this Action.

Under the first prong of the qualified immunity analysis, Jefferson does not plead facts establishing that Sheriff Gonzalez, in his individual capacity, violated his

11

constitutional rights against excessive force. Jefferson does not allege that Sheriff Gonzalez was personally involved in the incident between Jefferson and Ramos.  Nor does Jefferson allege facts showing how Sheriff Gonzalez should be individually liable because he "knows of" many instances of excessive force and has not implemented a policy to stop them from occurring. (Dkt. 24 at 11). As discussed above, Jefferson has not plead sufficient facts to show that there is a county custom of permitting the use of excessive force that Sherriff Gonzalez should have been aware of that caused Jefferson's injuries. *Id.*

Jefferson also cannot establish a claim against Sheriff Gonzalez for failing to stop Harris County's alleged unconstitutional policy of "abating internal affairs investigations (Dkt. 10 at 3).  As noted above, this alleged policy is not facially unconstitutional, and Jefferson has not plead facts showing how Sherriff Gonzalez should have known that an alleged "abatement" in internal affairs investigations would lead to excessive force being used against Jefferson. Nor has Jefferson alleged any other facts showing that Sherriff Gonzalez's actions regarding the policy were so deficient as to constitute a repudiation of Jefferson's constitutional rights and was the moving force behind the use of excess force against Jefferson.  Surviving a motion to dismiss requires more than hinting at "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, the Court finds that Sherriff Gonzalez is entitled to qualified immunity from Jefferson's excessive force claims.

12

### 3.  Right to Replead

Between the two lawsuits, Jefferson has already had the opportunity to file three complaints related to his claims arising from his incident with Ramos. He now asks for leave to file a fourth. A district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "But leave may be denied when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (citing *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004)). In light of (1) Jefferson's filing and voluntarily dismissing his first lawsuit after it had been pending for 21 months and then immediately refiling the same allegations in this action and (2) the fact that this would be Jefferson's fourth complaint regarding the same incident as prior complaints, allowing Jefferson the opportunity to amend would cause undue prejudice and delay to defendants in the timely resolution of this matter. Accordingly, the request to replead is **DENIED**.

### CONCLUSION

For the reasons stated above, the factual allegations in Jefferson's amended complaint are insufficient to establish a claim for municipal liability under Section 1983 against Harris County. The factual allegations are also insufficient to Sherriff Gonzalez's qualified immunity from this action. Accordingly, the motions to dismiss filed by Defendants Harris County and Sherriff Gonzalez (Dkt. 14, 15) are **GRANTED**.

13

Jefferson's request to amend his complaint (Dkt. 24) is **DENIED,** and this action is **DISMISSED**.

SIGNED at Houston, Texas, this 29th day of March, 2022.

_George C. Hanks Jr_

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

14